## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD THOMAS KENNEDY, | : | CIVIL NO: 3:19-CV-01476 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | (Chief Magistrate Judge Schwab) |
| BOROUGH OF FRACKVILLE | : | |
| PENNSYLVANIA, *et al.,* | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER
June 29, 2020

## I.  Introduction.

The plaintiff Edward Thomas Kennedy complains about events surrounding an arrest and criminal prosecution.  After screening Kennedy's complaint in accordance with 28 U.S.C. § 1915(e)(2), we conclude that the complaint fails to state a claim upon which relief may be granted.  We will, however, grant Kennedy leave to file an amended complaint.  Although we will grant Kennedy leave to file an amended complaint, we will not grant him leave to include claims that he has repeatedly and unsuccessfully raised in numerous prior cases.

## II.  Background.

Before commencing this action, Kennedy filed numerous other actions that have been dismissed.  He brought many of those cases in the United States District Court of the Eastern District of Pennsylvania. *See In re: Edward Thomas Kennedy*, 19-cv-0163, 19-cv-0212, 2019 WL 331684 (E.D. Pa. Jan. 25, 2019) (detailing the numerous cases Kennedy filed in the Eastern District of Pennsylvania, dismissing the two cases at issue, and ordering Kennedy "to show cause as to why he should not be barred from filing civil non-*habeas* cases related to facts already litigated without prepayment of the filing fee and administrative fee unless he pleads imminent danger").

Undeterred by his lack of success in the Eastern District, Kennedy also brought numerous cases in this court, which cases have also been dismissed. *See, e.g.*, *Kennedy v. Borough of Minersville Pennsylvania*, 3:19-cv-00124, 2019 WL 4316218 (M.D. Pa. Sept. 11, 2019), *appeal dismissed*, 2019 WL 8301072 (3d Cir. Dec. 10, 2019); *Kennedy v. Casey*, No. CV 3:19-67, 2019 WL 3002930, at *1 (M.D. Pa. July 10, 2019), *appeal dismissed*, No. 19-2878, 2019 WL 7987685, at *1 (3d Cir. Sept. 4, 2019); *Kennedy v. Dutcavage*, No. CV 3:18-767, 2019 WL 2642857, at *1 (M.D. Pa. June 27, 2019); *Kennedy v. Evanchick*, No. CV 3:18-777, 2019 WL 2224889, at *2 (M.D. Pa. May 23, 2019); *Kennedy v. Petrus*, No. 3:18-CV-697, 2019 WL 1867942, at *1 (M.D. Pa. Apr. 25, 2019).

Many of the Kennedy's prior cases deal, at least in part, with officers surrounding his residence on June 2, 2017, and threatening him; his arrest on August 28, 2017, at a Target parking lot in Allentown; and his subsequent imprisonment at the Lehigh County Prison from August 28-30, 2017. *See, e.g., Kennedy v. Hanna*, 5:18-cv-00977, slip orders (E.D. Pa. Sept. 3 & 6, 2019) (dismissing for failure to state a claim upon which relief may be granted Kennedy's complaint and amended complaint based on officers surrounding his residence on June 2, 2017 and threatening him, based on his arrest on August 28. 2017, at a Target in Allentown, and based on his subsequent imprisonment at the Lehigh County Prison from August 28-30, 2017); *Kennedy v. Borough of Minersville Pennsylvania*, 3:19-cv-00124, 2019 WL 4309071 (M.D. Pa. Aug. 23, 2019) (recommending dismissal of numerous claims for failure to state a claim upon which relief can be granted and recommending dismissal of a claim based on multiple officers surrounding Kennedy's home in Breinigsville, Pennsylvania, on June 2, 2017, and threatening to arrest him and a claim based on an arrest of Kennedy in a Target parking lot on August 28, 2017, without prejudice to Kennedy pursuing such claims in *Kennedy v. Hanna*, 5:18-CV-0977 (E.D. Pa.), where they were first raised), *report and recommendation adopted*, 2019 WL 4316218 (M.D. Pa. Sept. 11, 2019), *appeal dismissed*, 2019 WL 8301072 (3d Cir. Dec. 10, 2019). "These events inspired [Kennedy] to file a flurry of federal lawsuits against various

3

Defendants in both the Eastern and Middle Districts of Pennsylvania." *Casey*, 2019
WL 3027009, at *3.

Like in the Eastern District, Kennedy's pattern of filing frivolous claims
based on the same events in multiple cases led the Middle District to curtail his
ability to file such cases *in forma pauperis* at will.  More specifically, on June 27,
2019, Judge Mannion ordered Kennedy to show cause "why he should not be
required to obtain prior approval of the court before lodging any new complaints."
*See Kennedy v. Casey*, 3:19-cv-00067, slip order at 2 (M.D. Pa. June 27, 2019).
After Kennedy failed to adequately respond to the show cause order and in light of
his numerous frivolous filings, on July 10, 2019, Judge Mannion ordered that
"[t]he Clerk of the United States District Court for the Middle District of
Pennsylvania shall not accept any further case for filing from Edward Thomas
Kennedy, absent either a specific order from a judge of this court indicating that
such case is not frivolous or full payment of the filing fee." *Casey*, slip order at 2
(M.D. Pa. July 10, 2019).

Kennedy filed the instant complaint on August 26, 2019, *pro se* with an
application to proceed *in forma pauperis*.  In his complaint, Kennedy names as
defendants: (1) the Borough of Frackville Pennsylvania; (2) Phillip C. Petrus, an
officer of the Frackville Police Department; (3) Marvin L. Livergood, the Police
Chief of the Frackville Police Department; (4) Kim Y. Phillips, the Mayor of the

Borough of Frackville, Pennsylvania; (5) Maria T. Casey, the Clerk of Court of the Schuylkill County Court of Common Pleas; and (6) Christine A. Holman, the Schuylkill County District Attorney.

Aware of Judge Mannion's order in the *Casey* case, we nevertheless granted Kennedy's application to proceed *in forma pauperis* and allowed him to file this case. We did so because unlike in many of his other cases, Kennedy did not present untenable legal claims, such as failure to provide a republican form of government, or other frivolous claims. Rather, in this case, Kennedy presented constitutional claims under 42 U.S.C. § 1983. His claims appear to be primarily false-arrest and malicious-prosecution claims. Thus, we could not conclude that Kennedy's claims were frivolous. Nevertheless, after having reviewed the complaint, we conclude that it fails to state a claim upon which relief can be granted.

Kennedy's complaint is not clear. It appears that the nub of his claims is based on a purported false arrest and malicious prosecution in Schuylkill County. Nevertheless, like in numerous of his prior cases, Kennedy repeats his allegations regarding officers surrounding his residence and threatening him; regarding his arrest at a Target parking lot in Allentown; and regarding his subsequent

imprisonment.[1]  It is not clear if, or how, the defendants in this case have any relationship to these events.

For the reasons set forth below, we conclude that the complaint fails to state a claim upon which relief can be granted.  While we will grant Kennedy leave to file an amended complaint, we will prohibit him for including in any amended complaint claims based on the events from June and August of 2017, which events formed the basis of many of Kennedy's prior complaints.

## III.  Screening of *In Forma Pauperis* Complaints—Standard of Review.

Under 28 U.S.C. § 1915(e)(2), the court shall dismiss a complaint brought *in forma pauperis* if it determines that certain specified conditions are met.  More specifically, the court must dismiss a complaint that "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).  This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).

---

[1]  Kennedy does not provide dates for these events in the complaint in this case. But the allegations are so similar to the allegations Kennedy made in previous cases, that it is apparent that he is complaining about the same events that he complained about in previous cases.

6

When determining whether a complaint states a claim upon which relief can be granted, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting Fed.R.Civ.P. 8(a)(2)).  The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint states a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)). But a court "need not credit a complaint's bald assertions or legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

8

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (footnote and

citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).

A complaint filed by a *pro se* litigant is to be liberally construed and

"'however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v.*

*Gamble,* 429 U.S. 97, 106 (1976)).  Nevertheless, "pro se litigants still must allege

sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina,*

*Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## IV.  The complaint fails to state any federal claims upon which relief can be granted.

The complaint contains both federal and state-law claims.  We begin with

Kennedy's federal claims.

### A.  42 U.S.C. § 1983 claims.

Kennedy brings his constitutional claims under 42 U.S.C. § 1983.  "Section

1983 imposes civil liability upon any person who, acting under the color of state

law, deprives another individual of any rights, privileges, or immunities secured by

the Constitution or laws of the United States." *Shuman v. Penn Manor School*

*Dist.,* 422 F.3d 141, 146 (3d Cir. 2005).  Section 1983 "does not create any new

substantive rights but instead provides a remedy for the violation of a federal

constitutional or statutory right." *Id.* To establish a claim under § 1983, the

plaintiff must establish a deprivation of a federally protected right and that this

deprivation was committed by a person acting under color of state law. *Woloszyn v.*

*County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

### 1. The complaint fails to state a Fourth Amendment false-arrest or malicious-prosecution claim upon which relief may be granted against Phillips, Petrus, and Livergood.

Kennedy claims that Phillips, Petrus, and Livergood violated his Fourth

Amendment right to be free from false arrest and malicious prosecution.

The Fourth Amendment states, in pertinent part, that "[t]he right of the

people to be secure in their persons . . . against unreasonable searches and seizures,

shall not be violated, and no Warrants shall issue, but upon probable cause . . . ."

U.S. CONST. Amend. IV. "To state a claim for false arrest under the Fourth

Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the

arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d

675, 680 (3d Cir. 2012). "The probable-cause standard is incapable of precise

definition or quantification into percentages because it deals with probabilities and

depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366,

371 (2003). "Probable cause to arrest exists when the facts and circumstances

within the arresting officer's knowledge are sufficient in themselves to warrant a

reasonable person to believe that an offense has been or is being committed by the

person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995). An "officer may draw inferences based on his own experience in deciding whether probable cause exists." *Ornelas v. United States*, 517 U.S. 690, 700 (1996).

To state a malicious prosecution claim, the plaintiff must "show that: '(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendants initiated the proceeding without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) he suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.'" *Geness v. Cox*, 902 F.3d 344, 355 (3d Cir. 2018) (quoting *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017)).

Here, Kennedy's allegations regarding his arrest are not clear. Although he mentions proceedings in Schuylkill County, he also references the events when officers surrounded his house and when he was arrested in a Target parking lot in Allentown, which is in Lehigh County. It is not clear if Kennedy is complaining about a different arrest at a different time, or if he is just rehashing his claims based on the events that formed the basis of many of his prior cases. And it is not clear who arrested Kennedy. Kennedy's allegations regarding the defendants' involvement in his prosecution are similarly confusing. Further, although defendant Petrus is identified as a police officer, defendant Livergood is identified

11

as the police chief and defendant Phillips as the Mayor of the Borough of

Frackville.  Yet Kennedy fails to allege how these defendants were involved in his

arrest or prosecution.

Liability in a 42 U.S.C. § 1983 action is personal in nature, and to be liable,

a defendant must have been personally involved in the wrongful conduct.  Thus,

respondeat superior cannot form the basis of liability. *Jutrowski v. Twp. of*

*Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018).  In other words, "each Government

official, his or her title notwithstanding, is only liable for his or her own

misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  And so, a constitutional

deprivation cannot be premised merely on the fact that the defendant was a

supervisor when the incidents set forth in the complaint occurred. *See Alexander v.*

*Forr*, 297 F. App'x 102, 104–05 (3d Cir. 2008).  Rather, "[b]ecause vicarious

liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has

violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Third Circuit has "recognized that 'there are two theories of supervisory

liability, one under which supervisors can be liable if they established and

maintained a policy, practice or custom which directly caused the constitutional

harm, and another under which they can be liable if they participated in violating

plaintiff's rights, directed others to violate them, or, as the persons in charge, had

knowledge of and acquiesced in their subordinates' violations.'" *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)).

"Where a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in (i.e., tacitly assented to or accepted) the subordinate's conduct." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997) (footnote omitted), *abrogated on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).

To set forth a claim for supervisory liability under the policy-and-practice strand of supervisory liability, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

13

*Id.* at 227 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)). "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Id.*

Here, the complaint fails to allege how defendants Phillips, Petrus, and Livergood were personally involved in the events underlying his claims. Thus, the complaint fails to state a Fourth Amendment false-arrest or malicious-prosecution claim upon which relief may be granted against defendants Phillips, Petrus, and Livergood.

> **2. The complaint fails to state a Fifth or a Fourteenth Amendment equal protection claim upon which relief may be granted against Phillips, Petrus, and Livergood.**

Kennedy claims Phillips, Petrus, and Livergood violated his Fifth and Fourteenth Amendment rights to equal protection by unlawfully arresting him and maliciously prosecuting him.

The Fifth Amendment provides, in part, that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Although the Fifth Amendment does not contain an equal protection clause, the Supreme Court has construed the Fifth Amendment's Due Process Clause as containing an equal protection guarantee." *Mack v. Warden Loretto FCI*,

839 F.3d 286, 305 n.112 (3d Cir. 2016) (citing *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 616 (1991)).  The due process clause and equal protection guarantee of the Fifth Amendment, however, apply only to the federal government and federal officials. *Shoemaker v. City of Lock Haven*, 906 F. Supp. 230, 237 (M.D. Pa. 1995).  The Fifth Amendment "does not apply to the acts or conduct of the states, their agencies, subdivisions, or employees." *Id.*  Thus, the Fifth Amendment is not applicable in this case because the defendants are state, not federal, actors.

Therefore, we address Kennedy's equal-protection claim under the Fourteenth Amendment.  The Equal Protection Clause directs that all similarly situated individuals be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Two independent legal theories exist upon which a plaintiff may predicate an equal protection claim: the traditional theory and the class-of-one theory.

Under the traditional theory, "[t]o prevail on its equal protection claim, [a plaintiff] must show that the Government has treated it differently from a *similarly* situated party *and* that the Government's explanation for the differing treatment does *not* satisfy the relevant level of scrutiny." *Real Alternatives, Inc. v. Sec'y Dep't of Health & Human Servs.*, 867 F.3d 338, 348 (3d Cir. 2017).  Where, as here, the classification at issue does not involve a suspect class or target a

15

fundamental right, "rational basis review is the applicable standard." *Id.*; *see also*

*Romer v. Evans*, 517 U.S. 620, 631 (1996) (stating that "if a law neither burdens a

fundamental right nor targets a suspect class, we will uphold the legislative

classification so long as it bears a rational relation to some legitimate end").  Under

the traditional theory a plaintiff "must prove the existence of purposeful

discrimination" by the defendant. *Keenan v. City of Phila.,* 983 F.2d 459, 465 (3d

Cir. 1992).

Under the class-of-one theory, a plaintiff may advance an equal protection

claim absent membership in a protected class if the plaintiff shows that the

defendants engaged in irrational and intentional differential treatment of him when

compared with similarly situated individuals. *See Village of Willowbrook v. Olech,*

528 U.S. 562, 564 (2000).  This theory allows a plaintiff to assert an equal

protection claim regardless of protected class when the government irrationally

treats the plaintiff differently from similarly situated individuals. *Id.* at 564; *Hill v.*

*Borough of Kutztown,* 455 F.3d 225, 239 (3d Cir. 2006).  To prevail on a class-of-

one claim, the plaintiff must demonstrate that: (1) the defendants treated him

differently from others similarly situated; (2) the defendants did so intentionally;

and, (3) there was no rational basis for the difference in treatment. *Hill,* 455 F.3d at

239.

"To succeed under either theory, [the plaintiff] must demonstrate that [he] was treated differently from other similarly situated entities." *Rouse v. City of Pittsburgh*, 728 F. App'x 161, 164 (3d Cir. 2018) (citing *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (selective enforcement); *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (class of one)). "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992)).

Here, Kennedy does not allege facts that raise a reasonable inference that he was treated differently from a similarly situated party.  Rather, he alleges only that the defendants intentionally and/or with deliberate indifference and callous disregard of his rights, deprived him of equal protection.  Those allegations, however, are legal conclusions and are not sufficient to state an equal protection claim.

### 3.  The complaint fails to state a claim upon which relief may be granted against the Borough of Frackville.

Kennedy claims that the Borough of Frackville violated his rights.  A municipality, such as the Borough, cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior. Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).  Rather, "under § 1983, local

governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original)).  "[A] § 1983 claim against a municipality may proceed in two ways." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019).  One way for a plaintiff to present a claim against a municipality is to allege "that an unconstitutional policy or custom of the municipality led to his or her injuries." *Id.*  Another way for a plaintiff to present a claim against a municipality is to allege that his injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Id.* (quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)).

To plead a claim against a municipality under the policy-or-custom strand of municipal liability, "a plaintiff must allege that 'a [local] government's policy or custom . . . inflict[ed] the injury' in question." *Estate of Roman*, 914 F.3d at 798 (quoting *Monell*, 436 U.S. at 694).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Id*. (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original) (internal quotation marks omitted)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or

authorized by law, is so well-settled and permanent as virtually to constitute law.'"
*Id*. (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

"To satisfy the pleading standard, [a plaintiff] must identify a custom or
policy, and specify what exactly that custom or policy was." *McTernan v. City of
York,* 564 F.3d 636, 658 (3d Cir. 2009). "Although a policy or custom is necessary
to plead a municipal claim, it is not sufficient to survive a motion to dismiss."
*Estate of Roman*, 914 F.3d at 798. "A plaintiff must also allege that the policy or
custom was the 'proximate cause' of his injuries." *Id*.

Here, Kennedy has not alleged facts from which it can reasonably be
inferred that a policy or custom of the Borough of Frackville violated his rights.
Although he alleges that the Borough violated his rights "[t]hrough its policy,
customs and or practice," (*doc. 1* at ¶ 74), Kennedy does not actually allege what
the policy, custom, or practice of the Borough was or how it violated his rights.
Accordingly, Kennedy fails to state a claim upon which relief can be granted under
the policy-or-custom strand of municipal liability.

Another way for a plaintiff to present a claim against a municipality is to
allege that his or her injuries "were caused by a failure or inadequacy by the
municipality that 'reflects a deliberate or conscious choice.'" *Forrest*, 930 F.3d at
105 (quoting *Estate of Roman*, 914 F.3d at 798). "The latter avenue arose in the
failure-to-train context, but applies to other failures and inadequacies by

municipalities, including those related to supervision and discipline of its police officers." *Id.*

A plaintiff asserting a municipal liability claim based on a failure or inadequacy of training, supervision, or discipline "need not allege an unconstitutional policy." *Estate of Roman*, 914 F.3d at 798.  Rather, he must show that the municipality's failure to train, supervise, or discipline "its employees 'reflects a deliberate or conscious choice.'" *Id.* (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)).  In this regard, the plaintiff must show "a failure or inadequacy amounting to deliberate indifference on the part of the municipality." *Forrest*, 930 F.3d at 106.  "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

Here, citing to *Kessler v. Borough of Frackville*, No. 3:17-Cv-2231 (M.D. Pa.), Kennedy contends that the Borough "knew that Defendants Petrus and Livergood were capable of engaging in the unlawful and illegal filing [of] false criminal charges in the prison case due to prior incidents and investigations in the nearby Borough of Frackville litigation." *Doc. 1* at ¶ 71 (footnote omitted).  But Kennedy fails to explain how the *Kessler* case, which did not proceed to trial,

20

supports his allegations.  And Kennedy has not alleged facts from which it can

reasonably be inferred that a failure or inadequacy of training, supervision, or

discipline by the Borough of Frackville caused a violation of his rights.

In sum, the complaint fails to state a claim against the Borough of Frackville

upon which relief can be granted.

### 4. The complaint fails to state a claim against defendant Holman upon which relief can be granted, and defendant Holman is entitled to prosecutorial immunity.

Kennedy also brings claims against defendant Holman, the District Attorney

of Schuylkill County.  He alleges that Holman filed a bench warrant that was fake.

He attached as exhibits to his complaint the bench warrant as well as defendant

Hollman's motion for the bench warrant. *See doc. 1* at 22-27.  Those exhibits show

that the bench warrant was based on Kennedy's failure to appear before a

magisterial district judge for a preliminary hearing. *Id.*  According to Kennedy,

defendant Holman signed the motion for the bench warrant without submitting a

"sworn affidavit." *Doc. 1* at ¶ 44.  Kennedy alleges that "Holman did not swear

o[r] affirm[] under penalty of perjury that the hearsay evidence was true, complete

and correct; that is, Holman failed to affirm that the signatures on the hearsay

evidence presented to the court belonged to the Plaintiff Kennedy." *Id.*  Kennedy

does not, however, allege to what hearsay he is referring.  And while he alleges

that Holman mislead the judge and presented him with false information, he again

does not allege to what false information he is referring.  Given Kennedy's lack of

clarity as to what Holman did to violate his rights, the complaint fails to state a

claim against Holman upon which relief can be granted.

Moreover, Holman is entitled to prosecutorial immunity for Kennedy's

claim based on her filing a motion for a bench warrant.  "The text of § 1983 does

not provide any immunities from suit." *Fogle v. Sokol*, 957 F.3d 148, 158 (3d Cir.

2020).  "Although § 1983 purports to subject '[e]very person' acting under color of

state law to liability for depriving any other person in the United States of 'rights,

privileges, or immunities secured by the Constitution and laws,' the Supreme Court

has recognized that § 1983 was not meant to 'abolish wholesale all common-law

immunities.'" *Yarris v. Delaware,* 465 F.3d 129, 134–35 (3d Cir. 2006) (quoting

*Pierson v. Ray,* 386 U.S. 547, 554 (1967)).  There are two kinds of immunity under

§ 1983: qualified immunity and absolute immunity. *Id.* at 135.  Although most

public officials are entitled only to qualified immunity, public officials who

perform "'special functions'" are entitled to absolute immunity. *Id.* (quoting *Butz*

*v. Economou,* 438 U.S. 478, 508 (1978)).  "[A]bsolute immunity attaches to those

who perform functions integral to the judicial process." *Williams v. Consovoy*, 453

F.3d 173, 178 (3d Cir. 2006).  "This immunity was and still is considered

necessary 'to assure that judges, advocates, and witnesses can perform their

respective functions without harassment or intimidation.'" *McArdle v. Tronetti,* 961 F.2d 1083, 1084 (3d Cir. 1992) (quoting *Butz,* 438 U.S. at 512).

A functional approach is used to determine the immunity of a prosecutor. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997).  "The functions of the prosecutor encompass activities protected by both absolute and qualified immunity." *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992).  The inquiry focuses on the nature of the function performed, not the identity of the actor who performed it, and "[u]nder this functional approach, a prosecutor enjoys absolute immunity for actions performed in a judicial or 'quasi-judicial' capacity." *Odd v. Malone,* 538 F.3d 202, 208 (3d Cir. 2008).  The "functional test separates advocacy from everything else, entitling a prosecutor to absolute immunity only for  work 'intimately associated with the judicial phase of the criminal process.'" *Fogle*, 957 F.3d at 159-60 (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)).  Thus, for example, a prosecutor is entitled to absolute immunity from a claim based on a prosecutor "initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).  A prosecutor is also entitled to absolute immunity for the preparation and filing of charging documents and arrest warrants. *Kalina,* 522 U.S. at 129.  Absolute immunity does not, however, apply to administrative or investigative actions unrelated to initiating or conducting judicial proceedings. *Id.*

"Determining the precise function that a prosecutor is performing is a fact-specific analysis." *Fogle*, 957 F.3d at 160.  "And while '[i]t is tempting to derive bright-line rules' from the Supreme Court's jurisprudence, [the Third Circuit has] 'cautioned against such categorical reasoning' to 'preserve the fact-based nature of the inquiry.'" *Id.* (quoting *Odd*, 538 F.3d at 210).

In this case, Kennedy complains about defendant Holman seeking a bench warrant from the court.  Because Holman was acting as an advocate when she sought the bench warrant, she is entitled to absolute immunity. *See Bittner v. Snyder Cty.*, No. 08-CV-707, 2009 WL 179776, at *5 (M.D. Pa. Jan. 26, 2009) (concluding that "the application for a bench warrant and the facilitation of arrest certainly falls within the 'judicial phase' of litigation and would therefore qualify for absolute immunity"), *aff'd on other grounds*, 345 F. App'x 790 (3d Cir. 2009).

### 5.  The complaint fails to state a claim upon which relief can be granted against defendant Casey.

Kennedy claims that defendant Casey filed a fake bench warrant, containing a fake address, in the Court of Common Pleas of Schuylkill County.  Defendant Casey is identified as the Clerk of Court, and Kennedy does not allege facts from which it can reasonably be inferred that defendant Casey did anything other than docket the bench warrant signed by the judge and the motion for the bench warrant signed by defendant Holman.  For example, Kennedy has not alleged that

24

defendant Casey supplied the information as to the bench warrant or the motion for
the bench warrant.  Nor has Kennedy alleged that Casey had any discretion to
refuse to docket that bench warrant or the motion for the bench warrant.  In sum,
Kennedy has not alleged facts from which it can reasonably be inferred that
defendant Casey violated his rights.  Accordingly, the complaint fails to state a 42
U.S.C. § 1983 claim upon which relief can be granted against defendant Casey.

### B.  The complaint fails to state a 42 U.S.C. § 1985(3) claim upon which relief may be granted.

Kennedy also claims the defendants violated 42 U.S.C. § 1985.  42 U.S.C.
§ 1985(3)[2] "permits an action to be brought by one injured by a conspiracy formed
'for the purpose of depriving, either directly or indirectly, any person or class of
persons of the equal protection of the laws, or of equal privileges and immunities
under the laws.'" *Farber v. City of Paterson,* 440 F.3d 131, 134 (3d Cir. 2006)
(quoting § 1985(3)).  Section 1985(3) is limited to conspiracies based on racial or
some other class-based invidiously discriminatory animus. *Griffin v. Breckenridge,*
403 U.S. 88, 102 (1971).  "The essence of a conspiracy is an agreement." *United
States v. Kelly,* 892 F.2d 255, 258 (3d Cir. 1989).  To establish a conspiracy claim,
a plaintiff must show "facts from which a conspiratorial agreement can be

---

[2]  Although Kennedy does not specify under which subsection of the §1985 he is
proceeding, it appears that § 1985(3) is the most likely candidate.

25

inferred." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010).

Kennedy's allegations regarding a conspiracy are conclusory.  He does not allege facts that show that the defendants entered into a conspiracy or an agreement to deprive him of equal protection of the laws or of equal privileges and immunities under the law.  Kennedy also does not allege facts that there was a conspiracy based on racial or some other class-based invidiously discriminatory animus.  Accordingly, the complaint fails to state a §1985(3) claim upon which relief may be granted.

## V.  The court declines to exercise supplemental jurisdiction over the state-law claims.

In addition to his federal claims, Kennedy asserts the following state law claims: false arrest, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, abuse of process, and malicious prosecution.

Whether to exercise supplemental jurisdiction is within the discretion of the court.  28 U.S.C. § 1367(c)(3) provides that district courts may decline to exercise supplemental jurisdiction over a state-law claim if the district court has dismissed all claims over which it has original jurisdiction.  When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in

each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cahill*, 484 U.S. 343, 350 (1988)).  The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Miflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

There is nothing unique about this case such that considerations of judicial economy, convenience, and fairness provide an affirmative justification for exercising supplemental jurisdiction over Kennedy's state-law claims. Accordingly, because we conclude that the complaint fails to state any federal claims upon which relief can be granted, we will decline to exercise supplemental jurisdiction over Kennedy's state-law claims.

## VI.  Leave to Amend.

Before dismissing a complaint under the screening provision of 28 U.S.C.§ 1915, the court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State*

*Hospital*, 293 F.3d 103, 114 (3d Cir. 2002).  Here, in light of the liberal-

amendment standard, although this screening analysis calls for dismissal of the

complaint, Kennedy should be granted a final opportunity to comply with the

requirements of Fed.R.Civ.P. 8 and attempt to state a claim upon which relief can

granted.  Thus, we will grant Kennedy leave to file an amended complaint.

　　　Although we will grant Kennedy leave to file an amended complaint, he is

prohibited from including in his amended complaint any claims based on officers

surrounding his residence on June 2, 2017, and threatening him; his arrest on

August 28, 2017, at a Target parking lot in Allentown; and his subsequent

imprisonment at the Lehigh County Prison from August 28-30, 2017.  As set forth

above, Kennedy has filed numerous cases based on those incidents, and those cases

have been dismissed.  Kennedy's repeated assertion of claims based on those same

events is malicious.

　　　"A court that considers whether an action is malicious must, in accordance

with the definition of the term 'malicious,' engage in a subjective inquiry into the

litigant's motivations at the time of the filing of the lawsuit to determine whether

the action is an attempt to vex, injure or harass the defendant." *Deutsch v. United

States*, 67 F.3d 1080, 1086 (3d Cir. 1995). "'A complaint is "malicious" when it

contains allegations which the plaintiff knows to be false, it is part of a

longstanding pattern of abusive and repetitious lawsuits, or it contains disrespectful

or abusive language.'" *Mickell v. Geroulo*, No. 3:19-CV-01730, 2020 WL 3077487, at *2 (M.D. Pa. June 10, 2020) (quoting *Trader v. R.S.*, No. 11-0039, 2011 WL 1666931, at *2 (E.D. Pa. May 2, 2011)).  "Repetitive litigation undoubtedly is some evidence of a litigant's motivation to vex or harass a defendant where it serves no legitimate purpose." *Kennedy v. Getz*, 757 F. App'x 205, 207–08 (3d Cir. 2018).

The Third Circuit has affirmed the dismissal of one of Kennedy's prior cases raising the claims at issue as malicious and for failure to state a claim upon which relief can be granted. *Id*. at 208.  Accordingly, although Kennedy is granted leave to file an amended complaint, he is prohibited from including in his amended complaint any claims based on officers surrounding his residence on June 2, 2017, and threatening him; his arrest on August 28, 2017, at a Target parking lot in Allentown; and his subsequent imprisonment at the Lehigh County Prison from August 28-30, 2017.

## VII.  Motion re Magistrate Judge.

Kennedy filed a document titled "Motion and Memorandum" asserting that he declines to have a magistrate judge conduct any proceeding in this case.  But Kennedy's consent is not required for a magistrate judge to screen his complaint.

Under 28 U.S.C. § 636(b)(1)(A), "a judge my designate a magistrate judge to hear and determine any pretrial matter pending before the court," except for certain listed motions.  And by Local Rule of this Court, "[a]ny magistrate judge of this district may perform any duty authorized or allowed by law to be performed by a magistrate judge." M.D. Pa. L.R. 72.1(a).  "Thus, in general, a magistrate judge, without the consent of the parties, has the power to enter orders which do not dispose of the case." *In re U.S. Healthcare*, 159 F.3d 142, 145 (3d Cir. 1998).

The undersigned does not need Kennedy's consent to screen his complaint. *See Kennedy v. Borough of Minersville Pennsylvania*, No. 3:19-CV-0124, 2019 WL 4316218, at *1 (M.D. Pa. Sept. 11, 2019).  Any case dispositive issues will be addressed by way of a report and recommendation to the district judge.

Kennedy also mentions in passing "recusal," but he does not set forth any basis for recusal of the undersigned. *Doc. 8* at 1.  Nor is there any basis for recusal. Accordingly, Kennedy's motion objecting to the undersigned magistrate judge conducting any proceedings in this case will be denied.

## VIII.  Conclusion.

For the foregoing reasons, **IT IS ORDERED** that Kennedy's motion (*doc. 8*) objecting to a magistrate judge conducting any proceedings in this case is **DENIED**.  **IT IS FURTHER ORDERED** that Kennedy is granted leave to file,

within 28 days of the date of this Order, an amended complaint in accordance with

this Order.[3]  If Kennedy fails to file an amended complaint, we will recommend

that the case be dismissed.


**S/ Susan E. Schwab**
Susan E. Schwab
United States Magistrate Judge

---

[3]  Any amended complaint must be titled as an amended complaint and must
contain the docket number of this case. Fed.R.Civ.P. 10(a).  "The plaintiff is
advised that any amended complaint must be complete in all respects." *Young v.
Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992).  "It must be a new pleading
which stands by itself as an adequate complaint without reference to the complaint
already filed." *Id*.  "In general, an amended pleading supersedes the original
pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*,
938 F.3d 69, 82 (3d Cir. 2019).  "Thus, the most recently filed amended complaint
becomes the operative pleading." *Id*.  In other words, if an amended complaint is
filed, the original complaint will have no role in the future litigation of this case.
Any amended complaint must also comply with the pleading requirements of the
Federal Rules of Civil Procedure, including the requirements that the complaint
contain "a short and plain statement of the grounds for the court's jurisdiction," "a
short and plain statement of the claim," and "a demand for the relief sought."
Fed.R.Civ.P. 8(a)(1)–(3).  Further, "[e]ach allegation must be simple, concise, and
direct." Fed.R.Civ.P. 8(d)(1).  "A party must state its claims or defenses in
numbered paragraphs, each limited as far as practicable to a single set of
circumstances." Fed.R.Civ.P. 10(b).  And to the extent it would promote clarity to
do so, "each claim founded on a separate transaction or occurrence . . . must be
stated in a separate count." *Id*.