UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD THOMAS KENNEDY, | : | **CASE NO. 3:19-CV-01476** |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | (Chief Magistrate Judge Schwab) |
| v. | : | |
| | : | |
| BOROUGH OF FRACKVILLE, | : | |
| *et al.*, | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.  Introduction.

The plaintiff Edward Thomas Kennedy complains about events surrounding an arrest and criminal prosecution.   After screening Kennedy's complaint in accordance with 28 U.S.C. § 1915(e)(2), we concluded that the complaint fails to state a claim upon which relief may be granted.   Although we granted Kennedy leave to file an amended complaint as to some of his claims, he has not filed an amended complaint.   Thus, we recommend that the court dismiss the complaint and close the case.

## II. Background and Procedural History.

Before commencing this action, Kennedy filed numerous other actions that have been dismissed.   He brought many of those cases in the United States District Court of the Eastern District of Pennsylvania. *See In re: Edward Thomas Kennedy*, 19-cv-0163, 19-cv-0212, 2019 WL 331684 (E.D. Pa. Jan. 25, 2019) (detailing the numerous cases Kennedy filed in the Eastern District of Pennsylvania, dismissing the two cases at issue, and ordering Kennedy "to show cause as to why he should not be barred from filing civil non-*habeas* cases related to facts already litigated without prepayment of the filing fee and administrative fee unless he pleads imminent danger").

Undeterred by his lack of success in the Eastern District, Kennedy also brought numerous cases in this court, which cases have also been dismissed. *See, e.g.*, *Kennedy v. Borough of Minersville Pennsylvania*, 3:19-cv-00124, 2019 WL 4316218 (M.D. Pa. Sept. 11, 2019), *appeal dismissed*, 2019 WL 8301072 (3d Cir. Dec. 10, 2019); *Kennedy v. Casey*, No. CV 3:19-67, 2019 WL 3002930, at *1 (M.D. Pa. July 10, 2019), *appeal dismissed*, No. 19-2878, 2019 WL 7987685, at *1 (3d Cir. Sept. 4, 2019); *Kennedy v. Dutcavage*, No. CV 3:18-767, 2019 WL 2642857, at *1 (M.D. Pa. June 27, 2019); *Kennedy v. Evanchick*, No. CV 3:18-

777, 2019 WL 2224889, at *2 (M.D. Pa. May 23, 2019); *Kennedy v. Petrus*, No. 3:18-CV-697, 2019 WL 1867942, at *1 (M.D. Pa. Apr. 25, 2019).

Many of the Kennedy's prior cases deal, at least in part, with officers surrounding his residence on June 2, 2017, and threatening him; his arrest on August 28, 2017, at a Target parking lot in Allentown; and his subsequent imprisonment at the Lehigh County Prison from August 28-30, 2017. *See, e.g., Kennedy v. Hanna*, 5:18-cv-00977, slip orders (E.D. Pa. Sept. 3 & 6, 2019) (dismissing for failure to state a claim upon which relief may be granted Kennedy's complaint and amended complaint based on officers surrounding his residence on June 2, 2017 and threatening him, based on his arrest on August 28. 2017, at a Target in Allentown, and based on his subsequent imprisonment at the Lehigh County Prison from August 28-30, 2017); *Kennedy v. Borough of Minersville Pennsylvania*, 3:19-cv-00124, 2019 WL 4309071 (M.D. Pa. Aug. 23, 2019) (recommending dismissal of numerous claims for failure to state a claim upon which relief can be granted and recommending dismissal of a claim based on multiple officers surrounding Kennedy's home in Breinigsville, Pennsylvania, on June 2, 2017, and threatening to arrest him and a claim based on an arrest of Kennedy in a Target parking lot on August 28, 2017, without prejudice to Kennedy

pursuing such claims in *Kennedy v. Hanna*, 5:18-CV-0977 (E.D. Pa.), where they were first raised), *report and recommendation adopted*, 2019 WL 4316218 (M.D. Pa. Sept. 11, 2019), *appeal dismissed*, 2019 WL 8301072 (3d Cir. Dec. 10, 2019). "These events inspired [Kennedy] to file a flurry of federal lawsuits against various Defendants in both the Eastern and Middle Districts of Pennsylvania." *Casey*, 2019 WL 3027009, at *3.

Like in the Eastern District, Kennedy's pattern of filing frivolous claims based on the same events in multiple cases led the Middle District to curtail his ability to file such cases *in forma pauperis* at will.   More specifically, on June 27, 2019, Judge Mannion ordered Kennedy to show cause "why he should not be required to obtain prior approval of the court before lodging any new complaints." *See Kennedy v. Casey*, 3:19-cv-00067, slip order at 2 (M.D. Pa. June 27, 2019). After Kennedy failed to adequately respond to the show cause order and in light of his numerous frivolous filings, on July 10, 2019, Judge Mannion ordered that "[t]he Clerk of the United States District Court for the Middle District of Pennsylvania shall not accept any further case for filing from Edward Thomas Kennedy, absent either a specific order from a judge of this court indicating that such case is not frivolous or full payment of the filing fee." *Casey*, slip order at 2 (M.D. Pa. July 10, 2019).

Kennedy filed the instant complaint on August 26, 2019, *pro se* with an application to proceed *in forma pauperis*.   In his complaint, Kennedy names as defendants: (1) the Borough of Frackville Pennsylvania; (2) Phillip C. Petrus, an officer of the Frackville Police Department; (3) Marvin L. Livergood, the Police Chief of the Frackville Police Department; (4) Kim Y. Phillips, the Mayor of the Borough of Frackville, Pennsylvania; (5) Maria T. Casey, the Clerk of Court of the Schuylkill County Court of Common Pleas; and (6) Christine A. Holman, the Schuylkill County District Attorney.

Aware of Judge Mannion's order in the *Casey* case, we nevertheless granted Kennedy's application to proceed *in forma pauperis* and allowed him to file this case.   We did so because unlike in many of his other cases, Kennedy did not present untenable legal claims, such as failure to provide a republican form of government, or other frivolous claims.   Rather, in this case, Kennedy presented constitutional claims under 42 U.S.C. § 1983.   His claims appear to be primarily false-arrest and malicious-prosecution claims.   Thus, we could not conclude that Kennedy's claims were frivolous.   Nevertheless, after having reviewed the complaint, we concluded that it fails to state a claim upon which relief can be granted.

Kennedy's complaint is not clear.   It appears that the nub of his claims is based on a purported false arrest and malicious prosecution in Schuylkill County. Nevertheless, like in numerous of his prior cases, Kennedy repeats his allegations regarding officers surrounding his residence and threatening him; regarding his arrest at a Target parking lot in Allentown; and regarding his subsequent imprisonment.[1]   It is not clear if, or how, the defendants in this case have any relationship to these events.

For the reasons set forth below, we concluded that the complaint fails to state a claim upon which relief can be granted.   While we granted Kennedy leave to file an amended complaint, we prohibited him from including in any amended complaint claims based on the events from June and August of 2017, which events formed the basis of many of Kennedy's prior complaints.   By the Order of June 29, 2020, we gave Kennedy leave to file an amended complaint within 28 days. More than 28 days have passed, and Kennedy has not filed an amended complaint.

---

[1]   Kennedy does not provide dates for these events in the complaint in this case. But the allegations are so similar to the allegations Kennedy made in previous cases, that it is apparent that he is complaining about the same events that he complained about in previous cases.

6

### III.    Screening of *In Forma Pauperis* Complaints—Standard of Review.

Under 28 U.S.C. § 1915(e)(2), the court shall dismiss a complaint brought *in forma pauperis* if it determines that certain specified conditions are met.   More specifically, the court must dismiss a complaint that "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).   This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).

When determining whether a complaint states a claim upon which relief can be granted, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).   In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting Fed.R.Civ.P.

8(a)(2)).   The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).   Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).   "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint states a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)).   But a court "need not credit a complaint's bald assertions or legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).   A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions.   Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.   In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."   Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (footnote and citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).   Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

**IV.  The complaint fails to state any federal claims upon which relief can be granted.**

The complaint contains both federal and state-law claims.   We begin with

Kennedy's federal claims.

**A.   42 U.S.C. § 1983 claims.**

Kennedy brings his constitutional claims under 42 U.S.C. § 1983.   "Section

1983 imposes civil liability upon any person who, acting under the color of state

law, deprives another individual of any rights, privileges, or immunities secured by

the Constitution or laws of the United States." *Shuman v. Penn Manor School*

*Dist.,* 422 F.3d 141, 146 (3d Cir. 2005).   Section 1983 "does not create any new

substantive rights but instead provides a remedy for the violation of a federal

constitutional or statutory right." *Id.*   To establish a claim under § 1983, the

plaintiff must establish a deprivation of a federally protected right and that this

deprivation was committed by a person acting under color of state law. *Woloszyn v.*

*County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

**1.   The complaint fails to state a Fourth Amendment false-arrest or malicious-prosecution claim upon which relief may be granted against Phillips, Petrus, and Livergood.**

Kennedy claims that Phillips, Petrus, and Livergood violated his Fourth

Amendment right to be free from false arrest and malicious prosecution.

10

The Fourth Amendment states, in pertinent part, that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. CONST. Amend. IV.   "To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012).   "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).   "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995).   An "officer may draw inferences based on his own experience in deciding whether probable cause exists." *Ornelas v. United States*, 517 U.S. 690, 700 (1996).

To state a malicious prosecution claim, the plaintiff must "show that: '(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendants initiated the proceeding without probable cause; (4) the

defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) he suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.'" *Geness v. Cox*, 902 F.3d 344, 355 (3d Cir. 2018) (quoting *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017)).

Here, Kennedy's allegations regarding his arrest are not clear.    Although he mentions proceedings in Schuylkill County, he also references the events when officers surrounded his house and when he was arrested in a Target parking lot in Allentown, which is in Lehigh County.    It is not clear if Kennedy is complaining about a different arrest at a different time, or if he is just rehashing his claims based on the events that formed the basis of many of his prior cases.    And it is not clear who arrested Kennedy.    Kennedy's allegations regarding the defendants' involvement in his prosecution are similarly confusing.    Further, although defendant Petrus is identified as a police officer, defendant Livergood is identified as the police chief and defendant Phillips as the Mayor of the Borough of Frackville.    Yet Kennedy fails to allege how these defendants were involved in his arrest or prosecution.

Liability in a 42 U.S.C. § 1983 action is personal in nature, and to be liable, a defendant must have been personally involved in the wrongful conduct.    Thus, respondeat superior cannot form the basis of liability. *Jutrowski v. Twp. of*

*Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018).   In other words, "each Government

official, his or her title notwithstanding, is only liable for his or her own

misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).   And so, a

constitutional deprivation cannot be premised merely on the fact that the defendant

was a supervisor when the incidents set forth in the complaint occurred. *See*

*Alexander v. Forr*, 297 F. App'x 102, 104–05 (3d Cir. 2008).   Rather, "[b]ecause

vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead

that each Government-official defendant, through the official's own individual

actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

    The Third Circuit has "recognized that 'there are two theories of supervisory

liability, one under which supervisors can be liable if they established and

maintained a policy, practice or custom which directly caused the constitutional

harm, and another under which they can be liable if they participated in violating

plaintiff's rights, directed others to violate them, or, as the persons in charge, had

knowledge of and acquiesced in their subordinates' violations.'" *Parkell v.*

*Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago v. Warminster Twp.*,

629 F.3d 121, 129 n.5 (3d Cir. 2010)).

    "Where a supervisor with authority over a subordinate knows that the

subordinate is violating someone's rights but fails to act to stop the subordinate

13

from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in (i.e., tacitly assented to or accepted) the subordinate's conduct." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997) (footnote omitted), *abrogated on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).

To set forth a claim for supervisory liability under the policy-and-practice strand of supervisory liability, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Id.* at 227 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)). "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's

risk of injury and must establish a link between the supervisor, the act, and the injury." *Id.*

Here, the complaint fails to allege how defendants Phillips, Petrus, and Livergood were personally involved in the events underlying his claims.   Thus, the complaint fails to state a Fourth Amendment false-arrest or malicious-prosecution claim upon which relief may be granted against defendants Phillips, Petrus, and Livergood.

### 2.   The complaint fails to state a Fifth or a Fourteenth Amendment equal protection claim upon which relief may be granted against Phillips, Petrus, and Livergood.

Kennedy claims Phillips, Petrus, and Livergood violated his Fifth and Fourteenth Amendment rights to equal protection by unlawfully arresting him and maliciously prosecuting him.

The Fifth Amendment provides, in part, that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.   "Although the Fifth Amendment does not contain an equal protection clause, the Supreme Court has construed the Fifth Amendment's Due Process Clause as containing an equal protection guarantee." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 n.112 (3d Cir. 2016) (citing *Edmonson v. Leesville Concrete*

*Co.*, 500 U.S. 614, 616 (1991)).   The due process clause and equal protection

guarantee of the Fifth Amendment, however, apply only to the federal government

and federal officials. *Shoemaker v. City of Lock Haven*, 906 F. Supp. 230, 237

(M.D. Pa. 1995).   The Fifth Amendment "does not apply to the acts or conduct of

the states, their agencies, subdivisions, or employees." *Id.*   Thus, the Fifth

Amendment is not applicable in this case because the defendants are state, not

federal, actors.

Therefore, we address Kennedy's equal-protection claim under the

Fourteenth Amendment.   The Equal Protection Clause directs that all similarly

situated individuals be treated alike. *City of Cleburne v. Cleburne Living Ctr.,* 473

U.S. 432, 439 (1985).   Two independent legal theories exist upon which a plaintiff

may predicate an equal protection claim: the traditional theory and the class-of-one

theory.

Under the traditional theory, "[t]o prevail on its equal protection claim, [a

plaintiff] must show that the Government has treated it differently from a *similarly*

situated party *and* that the Government's explanation for the differing treatment

does *not* satisfy the relevant level of scrutiny." *Real Alternatives, Inc. v. Sec'y*

*Dep't of Health & Human Servs.*, 867 F.3d 338, 348 (3d Cir. 2017).   Where, as

here, the classification at issue does not involve a suspect class or target a

16

fundamental right, "rational basis review is the applicable standard." *Id*.; *see also Romer v. Evans*, 517 U.S. 620, 631 (1996) (stating that "if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end"). Under the traditional theory a plaintiff "must prove the existence of purposeful discrimination" by the defendant. *Keenan v. City of Phila.,* 983 F.2d 459, 465 (3d Cir. 1992).

Under the class-of-one theory, a plaintiff may advance an equal protection claim absent membership in a protected class if the plaintiff shows that the defendants engaged in irrational and intentional differential treatment of him when compared with similarly situated individuals. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000).   This theory allows a plaintiff to assert an equal protection claim regardless of protected class when the government irrationally treats the plaintiff differently from similarly situated individuals. *Id.* at 564; *Hill v. Borough of Kutztown,* 455 F.3d 225, 239 (3d Cir. 2006).   To prevail on a class-of-one claim, the plaintiff must demonstrate that: (1) the defendants treated him differently from others similarly situated; (2) the defendants did so intentionally; and, (3) there was no rational basis for the difference in treatment. *Hill,* 455 F.3d at 239.

"To succeed under either theory, [the plaintiff] must demonstrate that [he] was treated differently from other similarly situated entities." *Rouse v. City of Pittsburgh*, 728 F. App'x 161, 164 (3d Cir. 2018) (citing *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (selective enforcement); *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (class of one)). "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992)).

Here, Kennedy does not allege facts that raise a reasonable inference that he was treated differently from a similarly situated party.   Rather, he alleges only that the defendants intentionally and/or with deliberate indifference and callous disregard of his rights, deprived him of equal protection.   Those allegations, however, are legal conclusions and are not sufficient to state an equal protection claim.

### 3.   The complaint fails to state a claim upon which relief may be granted against the Borough of Frackville.

Kennedy claims that the Borough of Frackville violated his rights.   A municipality, such as the Borough, cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*. *Monell v. Department of*

18

*Social Services*, 436 U.S. 658, 691 (1978).   Rather, "under § 1983, local

governments are responsible only for 'their *own* illegal acts.'" *Connick v.*

*Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475

U.S. 469, 479 (1986) (emphasis in original)).   "[A] § 1983 claim against a

municipality may proceed in two ways." *Forrest v. Parry*, 930 F.3d 93, 105 (3d

Cir. 2019).   One way for a plaintiff to present a claim against a municipality is to

allege "that an unconstitutional policy or custom of the municipality led to his or

her injuries." *Id*.   Another way for a plaintiff to present a claim against a

municipality is to allege that his injuries "were caused by a failure or inadequacy

by the municipality that 'reflects a deliberate or conscious choice.'" *Id.* (quoting

*Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)).

　　　To plead a claim against a municipality under the policy-or-custom strand of

municipal liability, "a plaintiff must allege that 'a [local] government's policy or

custom . . . inflict[ed] the injury' in question." *Estate of Roman*, 914 F.3d at 798

(quoting *Monell*, 436 U.S. at 694).   "'Policy is made when a decisionmaker

possess[ing] final authority to establish municipal policy with respect to the action

issues an official proclamation, policy, or edict.'" *Id*. (quoting *Andrews v. City of*

*Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original) (internal

quotation marks omitted)).   "'Custom, on the other hand, can be proven by

showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

"To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).  "Although a policy or custom is necessary to plead a municipal claim, it is not sufficient to survive a motion to dismiss." *Estate of Roman*, 914 F.3d at 798.  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Id.*

Here, Kennedy has not alleged facts from which it can reasonably be inferred that a policy or custom of the Borough of Frackville violated his rights. Although he alleges that the Borough violated his rights "[t]hrough its policy, customs and or practice," (*doc. 1* at ¶ 74), Kennedy does not actually allege what the policy, custom, or practice of the Borough was or how it violated his rights. Accordingly, Kennedy fails to state a claim upon which relief can be granted under the policy-or-custom strand of municipal liability.

Another way for a plaintiff to present a claim against a municipality is to allege that his or her injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Forrest*, 930 F.3d at

105 (quoting *Estate of Roman*, 914 F.3d at 798). "The latter avenue arose in the failure-to-train context, but applies to other failures and inadequacies by municipalities, including those related to supervision and discipline of its police officers." *Id*.

A plaintiff asserting a municipal liability claim based on a failure or inadequacy of training, supervision, or discipline "need not allege an unconstitutional policy." *Estate of Roman*, 914 F.3d at 798. Rather, he must show that the municipality's failure to train, supervise, or discipline "its employees 'reflects a deliberate or conscious choice.'" *Id*. (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)). In this regard, the plaintiff must show "a failure or inadequacy amounting to deliberate indifference on the part of the municipality." *Forrest*, 930 F.3d at 106. "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id*.

Here, citing to *Kessler v. Borough of Frackville*, No. 3:17-Cv-2231 (M.D. Pa.), Kennedy contends that the Borough "knew that Defendants Petrus and Livergood were capable of engaging in the unlawful and illegal filing [of] false

criminal charges in the prison case due to prior incidents and investigations in the nearby Borough of Frackville litigation." *Doc. 1* at ¶ 71 (footnote omitted). But Kennedy fails to explain how the *Kessler* case, which did not proceed to trial, supports his allegations. And Kennedy has not alleged facts from which it can reasonably be inferred that a failure or inadequacy of training, supervision, or discipline by the Borough of Frackville caused a violation of his rights.

In sum, the complaint fails to state a claim against the Borough of Frackville upon which relief can be granted.

### 4. The complaint fails to state a claim against defendant Holman upon which relief can be granted, and defendant Holman is entitled to prosecutorial immunity.

Kennedy also brings claims against defendant Holman, the District Attorney of Schuylkill County. He alleges that Holman filed a bench warrant that was fake. He attached as exhibits to his complaint the bench warrant as well as defendant Hollman's motion for the bench warrant. *See doc. 1* at 22-27. Those exhibits show that the bench warrant was based on Kennedy's failure to appear before a magisterial district judge for a preliminary hearing. *Id.* According to Kennedy, defendant Holman signed the motion for the bench warrant without submitting a "sworn affidavit." *Doc. 1* at ¶ 44. Kennedy alleges that "Holman did not swear

o[r] affirm[] under penalty of perjury that the hearsay evidence was true, complete and correct; that is, Holman failed to affirm that the signatures on the hearsay evidence presented to the court belonged to the Plaintiff Kennedy." *Id.*  Kennedy does not, however, allege to what hearsay he is referring.  And while he alleges that Holman misled the judge and presented him with false information, he again does not allege to what false information he is referring.  Given Kennedy's lack of clarity as to what Holman did to violate his rights, the complaint fails to state a claim against Holman upon which relief can be granted.

Moreover, Holman is entitled to prosecutorial immunity for Kennedy's claim based on her filing a motion for a bench warrant.  "The text of § 1983 does not provide any immunities from suit." *Fogle v. Sokol*, 957 F.3d 148, 158 (3d Cir. 2020).  "Although § 1983 purports to subject '[e]very person' acting under color of state law to liability for depriving any other person in the United States of 'rights, privileges, or immunities secured by the Constitution and laws,' the Supreme Court has recognized that § 1983 was not meant to 'abolish wholesale all common-law immunities.'" *Yarris v. Delaware,* 465 F.3d 129, 134–35 (3d Cir. 2006) (quoting *Pierson v. Ray,* 386 U.S. 547, 554 (1967)).  There are two kinds of immunity under § 1983: qualified immunity and absolute immunity. *Id.* at 135.

Although most public officials are entitled only to qualified immunity, public officials who perform '"special functions"' are entitled to absolute immunity. *Id.* (quoting *Butz v. Economou,* 438 U.S. 478, 508 (1978)).  "[A]bsolute immunity attaches to those who perform functions integral to the judicial process." *Williams v. Consovoy*, 453 F.3d 173, 178 (3d Cir. 2006).  "This immunity was and still is considered necessary 'to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.'" *McArdle v. Tronetti,* 961 F.2d 1083, 1084 (3d Cir. 1992) (quoting *Butz,* 438 U.S. at 512).

A functional approach is used to determine the immunity of a prosecutor. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997).  "The functions of the prosecutor encompass activities protected by both absolute and qualified immunity." *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992).  The inquiry focuses on the nature of the function performed, not the identity of the actor who performed it, and "[u]nder this functional approach, a prosecutor enjoys absolute immunity for actions performed in a judicial or 'quasi-judicial' capacity." *Odd v. Malone,* 538 F.3d 202, 208 (3d Cir. 2008).  The "functional test separates advocacy from everything else, entitling a prosecutor to absolute immunity only for  work 'intimately associated with the judicial phase of the criminal process.'" *Fogle*, 957

24

F.3d at 159-60 (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)).    Thus, for

example, a prosecutor is entitled to absolute immunity from a claim based on a

prosecutor "initiating a prosecution and in presenting the State's case." *Imbler v.*

*Pachtman*, 424 U.S. 409, 431 (1976).    A prosecutor is also entitled to absolute

immunity for the preparation and filing of charging documents and arrest warrants.

*Kalina,* 522 U.S. at 129.    Absolute immunity does not, however, apply to

administrative or investigative actions unrelated to initiating or conducting judicial

proceedings. *Id.*

    "Determining the precise function that a prosecutor is performing is a fact-

specific analysis." *Fogle*, 957 F.3d at 160.    "And while '[i]t is tempting to derive

bright-line rules' from the Supreme Court's jurisprudence, [the Third Circuit has]

'cautioned against such categorical reasoning' to 'preserve the fact-based nature of

the inquiry.'" *Id*. (quoting *Odd*, 538 F.3d at 210).

    In this case, Kennedy complains about defendant Holman seeking a bench

warrant from the court.    Because Holman was acting as an advocate when she

sought the bench warrant, she is entitled to absolute immunity. *See Bittner v.*

*Snyder Cty.*, No. 08-CV-707, 2009 WL 179776, at *5 (M.D. Pa. Jan. 26, 2009)

(concluding that "the application for a bench warrant and the facilitation of arrest

certainly falls within the 'judicial phase' of litigation and would therefore qualify for absolute immunity"), *aff'd on other grounds*, 345 F. App'x 790 (3d Cir. 2009).

### 5.   The complaint fails to state a claim upon which relief can be granted against defendant Casey.

Kennedy claims that defendant Casey filed a fake bench warrant, containing a fake address, in the Court of Common Pleas of Schuylkill County.   Defendant Casey is identified as the Clerk of Court, and Kennedy does not allege facts from which it can reasonably be inferred that defendant Casey did anything other than docket the bench warrant signed by the judge and the motion for the bench warrant signed by defendant Holman.   For example, Kennedy has not alleged that defendant Casey supplied the information as to the bench warrant or the motion for the bench warrant.   Nor has Kennedy alleged that Casey had any discretion to refuse to docket that bench warrant or the motion for the bench warrant.   In sum, Kennedy has not alleged facts from which it can reasonably be inferred that defendant Casey violated his rights.   Accordingly, the complaint fails to state a 42 U.S.C. § 1983 claim upon which relief can be granted against defendant Casey.

**B.   The complaint fails to state a 42 U.S.C. § 1985(3) claim upon which relief may be granted.**

Kennedy also claims the defendants violated 42 U.S.C. § 1985.   42 U.S.C. § 1985(3)[2] "permits an action to be brought by one injured by a conspiracy formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Farber v. City of Paterson,* 440 F.3d 131, 134 (3d Cir. 2006) (quoting § 1985(3)).   Section 1985(3) is limited to conspiracies based on racial or some other class-based invidiously discriminatory animus. *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971).   "The essence of a conspiracy is an agreement." *United States v. Kelly,* 892 F.2d 255, 258 (3d Cir. 1989).   To establish a conspiracy claim, a plaintiff must show "facts from which a conspiratorial agreement can be inferred." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 178 (3d Cir. 2010).

Kennedy's allegations regarding a conspiracy are conclusory.   He does not allege facts that show that the defendants entered into a conspiracy or an agreement to deprive him of equal protection of the laws or of equal privileges and immunities under the law.   Kennedy also does not allege facts that there was a

---

[2]   Although Kennedy does not specify under which subsection of the §1985 he is proceeding, it appears that § 1985(3) is the most likely candidate.

conspiracy based on racial or some other class-based invidiously discriminatory

animus.   Accordingly, the complaint fails to state a §1985(3) claim upon which

relief may be granted.


**V.   The court should decline to exercise supplemental jurisdiction over the
state-law claims.**

In addition to his federal claims, Kennedy asserts the following state law

claims: false arrest, false imprisonment, intentional infliction of emotional distress,

negligent infliction of emotional distress, abuse of process, and malicious

prosecution.

Whether to exercise supplemental jurisdiction is within the discretion of the

court.   28 U.S.C. § 1367(c)(3) provides that district courts may decline to exercise

supplemental jurisdiction over a state-law claim if the district court has dismissed

all claims over which it has original jurisdiction.   When deciding whether to

exercise supplemental jurisdiction, "a federal court should consider and weigh in

each case, and at every stage of the litigation, the values of judicial economy,

convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522

U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cahill*, 484 U.S. 343, 350

(1988)).   The Third Circuit has held that "where the claim over which the district

court has original jurisdiction is dismissed before trial, the district court must

decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Miflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

There is nothing unique about this case such that considerations of judicial economy, convenience, and fairness provide an affirmative justification for exercising supplemental jurisdiction over Kennedy's state-law claims. Accordingly, because we conclude that the complaint fails to state any federal claims upon which relief can be granted, the court should decline to exercise supplemental jurisdiction over Kennedy's state-law claims.

## VI.   Leave to Amend.

Before dismissing a complaint under the screening provision of 28 U.S.C. § 1915, the court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002).   Here, in light of the liberal-amendment standard, although the screening analysis called for dismissal of the complaint, we gave Kennedy leave to file an amended complaint.

Although we gave Kennedy leave to file an amended complaint, we prohibited him from including in his amended complaint any claims based on officers surrounding his residence on June 2, 2017, and threatening him; his arrest on August 28, 2017, at a Target parking lot in Allentown; and his subsequent imprisonment at the Lehigh County Prison from August 28-30, 2017.   As set forth above, Kennedy has filed numerous cases based on those incidents, and those cases have been dismissed.   Kennedy's repeated assertion of claims based on those same events is malicious.

"A court that considers whether an action is malicious must, in accordance with the definition of the term 'malicious,' engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant." *Deutsch v. United States*, 67 F.3d 1080, 1086 (3d Cir. 1995). "'A complaint is "malicious" when it contains allegations which the plaintiff knows to be false, it is part of a longstanding pattern of abusive and repetitious lawsuits, or it contains disrespectful or abusive language.'" *Mickell v. Geroulo*, No. 3:19-CV-01730, 2020 WL 3077487, at *2 (M.D. Pa. June 10, 2020) (quoting *Trader v. R.S.*, No. 11-0039, 2011 WL 1666931, at *2 (E.D. Pa. May 2, 2011)).   "Repetitive litigation

undoubtedly is some evidence of a litigant's motivation to vex or harass a defendant where it serves no legitimate purpose." *Kennedy v. Getz*, 757 F. App'x 205, 207–08 (3d Cir. 2018).

The Third Circuit has affirmed the dismissal of one of Kennedy's prior cases raising the claims at issue as malicious and for failure to state a claim upon which relief can be granted. *Id*. at 208.   Accordingly, although Kennedy was granted leave to file an amended complaint, he was prohibited from including in his amended complaint any claims based on officers surrounding his residence on June 2, 2017, and threatening him; his arrest on August 28, 2017, at a Target parking lot in Allentown; and his subsequent imprisonment at the Lehigh County Prison from August 28-30, 2017.   We warned Kennedy that were he to fail to file an amended complaint, it would be recommended that the complaint be dismissed and that the case be closed.   But Kennedy has not filed an amended complaint.   Thus, further leave to amend would be futile.

## VII.   Recommendation.

Based on the foregoing, it is recommended that the complaint be dismissed pursuant to 29 U.S.C. § 1915(e)(2)(B)(ii) because it fails to state a claim upon which relief may be granted and that the case be closed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.   Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.   The briefing requirements set forth in Local Rule 72.2 shall apply.   A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.   The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 1st day of September, 2020.


*S/Susan E. Schwab*
Susan E. Schwab
Chief United States Magistrate Judge